SIGNED THIS: August 25, 2023

_____
**Mary P. Gorman
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No.   22-70235 |
| WHITNEY J. HARDING, ) | |
| ) | Chapter 7 |
| Debtor. ) | |

# O P I N I O N

Before the Court after trial is the Chapter 7 Trustee's Objection to Debtor's Claim of Exemptions (#27) asking that the Debtor's exemptions in "Household Goods," "Electronics," and a handgun be limited to the amounts claimed on the Debtor's Schedule C. For the reasons set forth herein, the Trustee's objection will be allowed, in part. The exemptions will be limited to the amounts now claimed, but the Debtor will not be prohibited from further amending her claim of exemptions.

### I.    Factual and Procedural Background

Whitney J. Harding ("Debtor") filed her voluntary Chapter 7 petition on April 20, 2022. Relevant to the issues here, she scheduled ownership of personal property that she described as "Household Goods" valued at $450, "Electronics" valued at $400, and a "Handgun" valued at $500. She claimed each asset or category of assets as exempt in the same amounts as their scheduled values. She also scheduled ownership of a "Term Insurance" policy with a surrender value of $0. She did not separately schedule ownership of any furniture, collectibles of value, jewelry, or other insurance policies.

On April 25, 2022, the Debtor suffered a fire at her apartment resulting in a total loss of most of her personal property. At some point thereafter, Jeffrey D. Richardson, the Chapter 7 Trustee, learned about the fire and that the Debtor had submitted a claim for the loss of her personal property to State Farm Insurance Company based on a renter's insurance policy. The Trustee filed a motion seeking turnover of documentation regarding the insurance claim and any proceeds paid based on the claim. The Debtor subsequently filed an amended Schedule A/B: Property listing for the first time "Renter's insurance policy – State Farm – no cash value at time of filing, subsequent claim for post-petition fire requests $28,000, Debtor suggests that any claim flows from exempt personal property and/or post-petition loss of rented apartment." The Trustee and the Debtor entered into an agreed order on the Trustee's motion for turnover agreeing that any remaining and future proceeds from the insurance claim would be held by the Debtor's attorney in his trust

account pending further order of court and that the Debtor would turn over to the Trustee all records relating to the insurance claim.

On June 27, 2022, the Trustee filed his Objection to Debtor's Claim of Exemptions. Noting the history set forth above and that he had yet to receive complete documentation of what had been paid by the insurance company and how those proceeds had been spent, the Trustee asked that (1) the Debtor's exemption for household goods be limited to the $450 amount claimed, (2) the Debtor's exemption for all electronics be limited to the $400 amount claimed, and (3) the Debtor's exemption for her handgun be limited to the $500 amount claimed. Resolution of the matter was continued several times while the Trustee sought additional documents from the Debtor and her insurance company. An evidentiary hearing was finally held July 6, 2023.

The Debtor, called as an adverse witness by the Trustee, was the only witness to testify. She described the reasoning behind the way she scheduled her property and exemptions in this case and the circumstances of the post-petition fire that resulted in the loss of her personal property, as well as the insurance claim that she filed.

The fire loss occurred just a few days after the Debtor filed her bankruptcy case. The Debtor testified that everything she lost in the fire had been owned by her at the time of her bankruptcy filing; she had acquired no additional property between her case filing and the fire. By early July 2022, the Debtor had received payments from the insurance company totaling

$26,015.71, which she testified were attributable only to property loss and were not intended to reimburse her for living expenses or displacement costs.

The Debtor identified an itemization of personal property generated by her insurance company based on a list provided by her of the items lost in the fire and what she estimated it would cost to replace them. She said the insurance company adjusted her cost figures based on the age of the items in creating its itemization. The itemization generated by the insurance company included a breakdown of the Debtor's property according to age and set forth two proposed payout values for each item—actual cash value and replacement cost value. According to the Debtor, the insurance company paid her the actual cash value of her lost property subject to reimbursement for additional amounts up to the replacement cost value for any items that she actually replaced within a certain time and for which she provided proof of purchase to the insurance company. Although the bulk of payments received under her insurance policy were based on actual cash value, the Debtor said that she did submit receipts for some replaced items for which she was ultimately paid the full replacement cost value. She believed that the last payment she received from the insurance company of $1478.54, dated July 2, 2022, was attributable to such replacement costs.

The Trustee reviewed with the Debtor a copy of the insurance itemization that he had marked up to highlight all items of personal property other than

-4-

food or clothing.[1] The Debtor reviewed the itemization page by page and agreed that the marked items did not include food or clothing. Neither she nor her attorney disputed the Trustee's representation that the actual cash value of the marked items as set forth in the insurance estimate totaled $14,560.68.[2]

The marked items of property on the itemization consisted of general household goods and consumer items, furniture, and electronics. In addition, the Debtor acknowledged that the total included amounts for wall art, books, and other items meeting the description of examples of "collectibles of value" on the Schedule A/B form instructions; she also agreed that she had not listed any such items on her schedules. The Debtor acknowledged that the total included values for jewelry items that she admittedly did not separately list or include as "jewelry" on her schedules. She conceded that the list of items and the values provided in support of her insurance claim were much more extensive and significantly greater than what was provided on her bankruptcy schedules.

The Trustee specifically asked the Debtor why she did not schedule the books, artwork, and collectibles that she owned when she filed bankruptcy and for which she claimed insurance reimbursement after the fire. She responded that those items were not of garage sale value. Likewise, when the Trustee pointed out that she had received insurance proceeds for a pair of diamond

---

[1] The Debtor had scheduled and claimed her clothing exempt in the amount of $200. The Trustee did not object to that exemption and stated at the beginning of the hearing that the amount of insurance proceeds the Debtor received for clothing was not at issue. Likewise, he stated that the $500 the Debtor received for food was not something he was going to seek to have turned over to the estate.

[2] The Court's own calculation yielded a result of $14,468.14 for the actual cash value of the marked items.

earrings but had scheduled no jewelry, the Debtor said that the earrings did not have garage sale value. The Trustee, suggesting some confusion, asked her whether she meant that the earrings and other items were not the type of property that would be sold at a garage sale and therefore could not be valued for a garage sale or whether she meant that such items would have no value if placed in a garage sale. The Debtor responded that she did not have an answer to the Trustee's question. She also admitted that she did not schedule any furniture despite claiming a couch, chair, and several other items of furniture on the insurance itemization. Her only explanation for the lack of disclosure of furniture on her schedules was that the items were old.

Under questioning by her own attorney and in an apparent effort to reconcile the significant discrepancies between her bankruptcy schedules and her insurance claim, the Debtor said that she lumped most of her personal property other than her handgun and electronics into the single category of "Household Goods" under the subparagraph for "Household goods and furnishings" on Schedule A/B. She testified that she had both held and shopped at several garage sales over the years and was familiar with garage sale prices. The Debtor maintained that, lumped together under the term "Household Goods," she had disclosed all her personal property—including furniture and collectibles—and that the $450 stated was a fair estimate of the garage sale value of all such property.

The Trustee closed by arguing that the Debtor had not disclosed any furniture, collectibles, books, works of art, or jewelry and therefore had not

-6-

claimed any such property as exempt. He asserted that, because the property was neither disclosed nor claimed as exempt, the insurance proceeds paid with respect to the loss of such items remained property of the estate. Further, he said that, because the Debtor failed to properly itemize her household goods on her schedules, she should be limited to the $450 claimed and is not entitled to the higher amount of insurance proceeds paid for such items. He asked that her exemption be limited to $450 and that she not be allowed to amend her exemptions.

The Debtor's attorney asserted that the use of the term "Household Goods" without any further itemization was broad enough to cover all the Debtor's personal property lost in the fire with the possible exception of her diamond earrings. He said that her exemption should not only be allowed but also be determined to cover all the Debtor's household goods, furniture, books, collectibles, and art, together with the insurance proceeds she received for the loss of such items. He conceded that the Debtor might ultimately be required to turn over to the Trustee the insurance proceeds related to the unscheduled and non-exempt diamond earrings when the motion for turnover is revisited.

Both attorneys cited to relevant case law. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central

District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the exemption of property from a bankruptcy estate are core proceedings. 28 U.S.C. §157(b)(2)(B). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III.   Legal Analysis

A bankruptcy estate "is comprised of . . . all legal and equitable interests of the debtor in property as of the commencement of the case[,]" as well as the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. §541(a)(1), (6). A debtor is entitled to claim certain exemptions in his or her property, thereby removing such exempted property from the estate. *Payne v. Wood*, 775 F.2d 202, 204 (7th Cir. 1985). Non-exempt property remains in the estate for the benefit of creditors. *Id.* The Supreme Court has explained that it is the date of filing when "the status and rights of the bankrupt, the creditors and the trustee . . . are fixed." *White v. Stump*, 266 U.S. 310, 313 (1924). It does not matter whether the property later changes form. *Payne*, 775 F.2d at 204.

An insurance policy of which the debtor is the beneficiary is generally an asset of the bankruptcy estate. *See In re Stinnett*, 465 F.3d 309, 312 (7th Cir. 2006) (citations omitted). "[P]ayments from insurance policies in which the

debtor had a prepetition interest, to the extent that the debtor has or would have a right to receive and keep those payments when the insurer paid on a claim, are 'proceeds' of estate property and thus also property of the estate." *Id.* at 312-13 (citations omitted).

Although the Debtor here did not claim an exemption in the insurance policy at issue, the Trustee has not asked the Court to find that the proceeds from the policy are property of the estate in their entirety, and the Court therefore need not reach that issue. *See Payne*, 775 F.2d at 207 (noting that the bankruptcy court might have decided the insurance policy at issue was itself an asset of the estate and directed all proceeds to be turned over to the trustee). Instead, the Trustee asks the Court to determine how much of the insurance proceeds are traceable to the Debtor's exempt personal property, taking the position that the insurance proceeds allocated to the Debtor should be limited to the amounts of property claimed as exempt. The Debtor, in turn, contends that, with the exception of the portion attributable to jewelry that was not separately listed and claimed as exempt on her bankruptcy schedules, all of the insurance proceeds are traceable to her exempt property and therefore protected by the exemption covering the property itself. The Trustee has the better position.

The Trustee as the objecting party has the burden of demonstrating by a preponderance of evidence that an exemption is improper and should be disallowed. *In re Arnold,* 2010 WL 1416031, at *1 (Bankr. C.D. Ill. Mar. 31, 2010). But that standard presupposes that the Debtor's claims of exemption

contain sufficient detail to provide adequate notice of what was being claimed as exempt, the burden of which rested entirely with the Debtor. *Payne*, 775 F.2d at 205-06. Here, the Trustee has made a prima facie showing that raises doubt about whether the Debtor's claims of exemption in "Household Goods" and "Electronics" contain enough detail to give adequate notice of what property she claimed as exempt. The Debtor glosses over this issue in favor of the general principle that her right to an exemption continues in the proceeds of her exempt property.

It is generally true that when a fire loss occurs after a case filing, a debtor would be entitled to whatever insurance proceeds are paid for exempt property, and the estate would be entitled to the proceeds for all non-exempt property. *Id.* at 204. But that leaves unanswered the question of what property was actually exempted. *Id.* at 205. For certain property, like items for which an exemption is generally allowed without regard to value (e.g. "Clothing" under Illinois law), the determination is straightforward: the proceeds are traceable to the exempt property and the full amounts go to the debtor.[3] *See Payne*, 775 F.2d at 205. But for categorical descriptions of property like "Household Goods" and "Electronics" that are at issue here, debtors are not generally entitled to

---

[3] This general principle applies to the extent that what is scheduled and claimed as exempt is adequately described and is actually covered by the statutory provisions under which the exemption is claimed. For instance, the Debtor here claimed an exemption in "Clothing" under 735 ILCS 5/12-1001(a). The Illinois exemption provision refers to "wearing apparel," a term that might be presumed to be synonymous with clothing. But Part 3, subparagraph 11 of Schedule A/B asks a debtor to disclose "Clothes" and includes as examples: "Everyday clothes, furs, leather coats, designer wear, shoes, accessories[.]" The term "accessories" may include items that would not be "wearing apparel" under the Illinois exemption statute regardless of how the items are required to be scheduled. The distinction is not at issue in this case as the Trustee has not challenged the Debtor's "clothing" exemption. It does, however, highlight the need for debtors to itemize their personal property in this and other categories to fully disclose what property they own and what they are claiming as exempt.

blanket exemptions of all property in those categories and such claims of exemption do not necessarily keep every item that could conceivably fall within those categories out of the estate. *Id.*

Debtors are not expected to itemize every item of property that they own. Indeed, the lower the value of items, the less reason for separately listing. *Id.* at 206. But it is critical that debtors provide sufficient detail in their schedules "to put the trustee on notice of the wisdom of further inquiry." *Id.* This is so because whether a claim of exemption contains adequate information to put the trustee on notice is an objective determination, based solely on the face of the debtor's schedules, not subjective intentions. *See Schwab v. Reilly*, 560 U.S. 770, 788-90 (2010); *Payne*, 775 F.2d at 206; *In re O'Malley*, 633 B.R. 332, 346 (N.D. Ill. 2021). And "[t]he result of filing inadequate schedules of exempt property is a limitation on the value debtors may receive for exempt assets in those categories." *In re Rosenzweig*, 245 B.R. 836, 841 (Bankr. N.D. Ill. 2000).

Official Form 106A/B, commonly known as Schedule A/B: Property and completed by the Debtor here, contains several parts and subparagraphs that ask debtors to state what property they have within different descriptive categories. Pertinent here, subparagraph 6 of Part 3 requires debtors to describe their interest in "Household goods and furnishings" and provides the following illustrative examples: "Major appliances, furniture, linens, china, kitchenware[.]" Subparagraph 7 asks of "Electronics" and lists as examples: "Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cellphones,

-11-

cameras, media players, games[.]" Subparagraph 8 asks of "Collectibles of value" exemplified by: "Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles[.]" And subparagraph 12 asks of "Jewelry" described as: "Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver[.]"

The Debtor marked subparagraph 12 for jewelry as "No" but now admits that she had diamond earrings and received insurance proceeds for those earrings. As to this item she concedes she did not claim an exemption and that the Trustee may be entitled to the insurance proceeds. She says that everything else on the insurance itemization was included in her claim of an exemption for "Household Goods" in the amount of $450. That argument must be rejected as a matter of law.

The Debtor marked subparagraph 8 as "No" thereby affirmatively representing that she had no books, pictures, or collectibles. Yet her insurance claim lists numerous items that fall into those categories. Her testimony that she lumped the items into her household goods claim was not credible, coming only after she was unable to explain her failure to list the items when questioned by the Trustee and her own attorney suggested through his questioning that she might have included these items in another subparagraph. Further, regardless of her intent, the Debtor did not have the right to mislead the Trustee by mischaracterizing the nature and extent of her property. Debtors do not have the option of affirmatively denying the existence

-12-

of certain types of property and then claiming that the very same property was disclosed through inclusion in a different generic property listing. The Debtor did not disclose her books, pictures, and collectibles, and, accordingly, she did not claim any such items exempt. They remained in the estate, and the insurance proceeds paid for the items are therefore also not exempt.

At subparagraph 6 of Part 3 regarding "Household goods and furnishings," the Debtor marked "Yes" but then listed only "Household Goods" and scheduled a $450 value. The Debtor did not disclose ownership of any furniture or any of the other specific items such as major appliances, linens, or china suggested on the form. By asserting ownership of only "Household Goods" under the subparagraph for "Household goods and furnishings," the Debtor effectively denied owning any furniture by omission. *See Payne*, 775 F.2d at 204 n.2 (listing "clothing" under the line item for "wearing apparel, jewelry, firearms, sports equipment, and other personal possessions" meant the debtors were claiming that they owned no jewelry, firearms, sports equipment, or other personal possessions). Just like her jewelry, books, pictures, and collectibles, the Debtor's failure to schedule ownership of furniture resulted in her furniture remaining in the estate and not being exempt. Further, her listing of "Household Goods" without any further itemization results in her exemption being limited to the $450 amount claimed rather than the enhanced amount she received in insurance proceeds. The Debtor's list of property withheld information that would have been relevant to the Trustee's evaluation of her claims of exemption; under *Payne*, her

-13-

"categorical claim[s] of exemption should not be honored beyond the value [she] attached to the categor[ies]." *Id.* at 206. To hold otherwise would be to "encourage the making of excessively general claims in the hope that if omissions should be discovered, the debtors could argue that the omitted property was 'really' in some broadly worded category." *Id.*

The Debtor's claim of exemption in electronics must likewise be limited to the value she claimed. She listed "Electronics" exempt in the amount of $400 but failed to itemize any of her electronics thereby limiting the Trustee's ability to know what she owned in that category of property. Such broad categorical exemptions simply do not provide enough information to trace the loss of particular items to specific insurance reimbursements and, under *Payne*, must be limited to the amounts claimed.

The Debtor is allowed her exemptions as claimed.[4] Because she listed her personal property in only unitemized, generic categories, however, she cannot trace her prior ownership of any particular item of property to any particular amount of the insurance proceeds received for the fire loss. Her exemptions will therefore be limited, as the Trustee requests, to the amounts claimed on her schedules as filed. The Trustee's request that such limitation be a permanent bar to amendment of the Debtor's schedules must be denied, however, as a matter of law.

---

[4] The Debtor also claimed a $500 exemption in a handgun, and the Trustee objected to that exemption on the same basis as the household goods and electronics. But the handgun was not listed on the insurance itemization—it apparently was not lost in the fire. The Trustee presented no evidence regarding the handgun or its value at the hearing. Because there were no insurance proceeds paid with respect to the handgun, the Debtor is not seeking to have her exemption in the handgun expanded to cover any such insurance proceeds as she is doing with the other items. Her exemption in the handgun will be allowed as claimed.

Federal Rule of Bankruptcy Procedure 1009 provides that a debtor may amend schedules "as a matter of course at any time before the case is closed." This case is open and has never been closed. The Debtor may amend her schedules if she chooses to do so. Further, the Supreme Court has held unequivocally that bankruptcy courts do not have the authority or discretion to "grant or withhold exemptions based on whatever considerations they deem appropriate." *Law v. Siegel*, 571 U.S. 415, 423 (2014). This Court cannot deny the Debtor the right to amend or disallow any amendments she might make as punishment for her failure to file complete original schedules or to have made timely amendments to her schedules—which might have alleviated the need for the Trustee to go through extensive discovery and litigation. Any amended schedules filed by the Debtor will be reviewed without regard to equitable considerations that are not expressly included in the Illinois exemption statute or the Bankruptcy Code.

Any amended schedules filed by the Debtor may, however, be challenged by the Trustee for accuracy. Meaningful amendments will necessarily include a detailed itemization of the property owned by the Debtor when she filed and that she seeks to exempt. The itemization must include the values placed by the Debtor on each item; lumping items of similar categories into aggregate values will not be helpful. If the Trustee objects to the Debtor's valuations, an evidentiary hearing will be required and the Trustee will be able to inquire as to the value placed on each item to reach whatever aggregate was disclosed. The Debtor failed to make any meaningful amendments to her schedules after her

fire loss. She is not precluded from trying again, but her success in exempting a significant amount of the insurance proceeds will be dependent on the accuracy of any further amendments.[5]

Further, the fact that the Debtor may amend her claim of exemptions and potentially exempt a significant amount of the insurance proceeds she received does not mean that she will escape all consequences for originally filing misleading schedules and for failing to correct her schedules when it became obvious that they were not complete. Nothing about *Law* suggests that bankruptcy courts or trustees are without "authority to respond to debtor misconduct with meaningful sanctions." *Law*, 571 U.S. at 427. To the contrary, sanctions may be in imposed under Federal Rule of Bankruptcy Procedure 9011, under §105(a) of the Code, or under the Court's inherent powers. *Id.* Further, a dishonest debtor may be denied a discharge. 11 U.S.C. §727(a); *Law*, 571 U.S. at 427. Only if the Debtor amends her schedules can the full extent of her omissions be understood and the imposition of sanctions, if any, be considered.

---

[5] In amending her schedules, the Debtor is not bound by the actual cash values of personal property as set forth in her insurance claim; she may value her personal property by whatever standard she deems appropriate. According to the Debtor, she used so-called garage sale values in creating her original schedules. And while not per se problematic, merely citing garage sale valuation to explain a significant discrepancy in value for the same property asserted elsewhere for another purpose is bound to draw greater scrutiny. *Compare Neidenbach v. Amica Mut. Ins. Co.*, 96 F. Supp. 3d 925, 935 (E.D. Mo. 2015) (large discrepancy between asserted values of property in support of loss claim and scheduled values in prior bankruptcy case amounted to misrepresentations not justified by garage sale value explanation), *with Pavelka v. Allstate Prop. & Cas. Ins. Co.*, 91 F. Supp. 3d 931, 937 (E.D. Mich. 2015) (the court carefully scrutinizing but ultimately finding that scheduling property at garage sale value in previous bankruptcy did not preclude debtor from asserting higher values for the same property in later breach of contract action against insurer). How ever the Debtor chooses to value her personal property in filing amended schedules, the burden will be on her to justify the values she places on each item of property if those values are challenged.

## IV. Conclusion

Debtors are not required to itemize every dish and spoon that they own to complete their bankruptcy schedules. At the same time, however, lumping almost everything that a debtor owns into the category of "Household Goods" is misleading and, without question, an improper way to schedule personal property. Debtors must disclose their personal property in sufficient detail using both the broad categories and the specific examples set forth on the Schedule A/B form to provide meaningful information to the trustee and creditors about what the debtors own and what is being claimed as exempt. The Debtor's failure to provide such meaningful information here results in a denial of her claim that all the post-petition insurance proceeds are traceable to property disclosed and exempted on her schedules.

It is unclear whether the problems here were caused by the Debtor intentionally failing to disclose all her personal property, by sloppy practices of her attorney, or a combination of the two. Regardless, both the Debtor and her attorney have work to do if the Debtor intends to amend her schedules and attempt to claim more of the insurance proceeds as exempt. As set forth above, any amendments are likely to be closely scrutinized, and the burden will be on the Debtor to justify every detail on any amended schedules.

Based on the currently filed schedules, the Debtor will be allowed and also limited to a $500 exemption in a handgun, a $450 exemption in household goods, and a $400 exemption in electronics. She is entitled to insurance proceeds only in the amount of $850 to cover her loss of the household goods

and electronics. The Trustee's request that the Debtor be barred from filing amended schedules will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###